## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ASHOK KUMAR,** | : | |
| Plaintiff, | : | |
| | : | |
| **v.** | : | **Civil Action No. 3:16-cv-01196 (VLB)** |
| | : | |
| **NANCY A. BERRYHILL,** | : | |
| **ACTING COMMISSIONER OF** | : | **September 26, 2017** |
| **SOCIAL SECURITY,** | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This is an administrative appeal following the denial of Ashok Kumar's application for disability insurance benefits under 42 U.S.C. §§ 405(g). Ashok Kumar ("Kumar") has moved for an order reversing or remanding the decision of the Commissioner of the Social Security Administration ("Commissioner"). [Dkt. No. 14.] The Commissioner has moved for an order affirming the decision. [Dkt. No. 22.] For the following reasons, Kumar's motion is GRANTED, the Commissioner's motion is DENIED, and the case is remanded for rehearing.

I.    **Factual Background**

The parties failed to file a joint stipulation of facts as required in this District's Standing Scheduling Order on Social Security Cases. [Dkt. 4 at 2; Dkt. 14 at 1.] Given the parties' failure to file a stipulation of facts, the Court has spent an inordinate amount of time reviewing the record, which includes medical records which were and were not before the ALJ. The following facts are taken from the Court's own review.

a. <u>Plaintiff's Background</u>

Kumar was born in 1960. [Dkt. No. 13-4 at 40.] He worked as a chemist for the Department of Public Health for 30 years before his alleged disability arose. [*Id*. at 44-45; Dkt. 13-8 at 7.] Kumar meets the insured status requirements of the Social Security Act through December 31, 2019. [Dkt. No. 13-4 at 16.] On May 20, 2014, Kumar applied for a Period of Disability and Disability Insurance Benefits. [Dkt. 13-4 at 14.] On September 30, 2014, a disability adjudicator denied his initial request for disability benefits and thereafter denied his request for reconsideration. [Dkt. 13-6 at 3; Dkt. 13-6 at 11.] On August 19, 2015, Kumar appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). [Dkt. 13-4 at 36.] On December 2, 2015, the ALJ issued a decision denying benefits. *Id*. at 11. On January 27, 2016, the appeals council denied Kumar's request for review of that decision thereby making the ALJ's decision the final decision of the Commissioner. *Id*. at 2. This appeal followed.

b. <u>Kumar's Medical History Presented to the ALJ</u>

On February 12, 2013, Dr. Surendra Chawla conducted a CT scan on Kumar's chest which showed an ascending aortic aneurysm. [Dkt. 13-9 at 4.] In the following months, Kumar had three follow-up appointments regarding his CT scan. [Dkt. 13-9 at 2 (appointment with Dr. Anil Vithala); Dkt. 13-9 at 79 (appointment with Dr. Joseph Sappington); Dkt. 13-9 at 3 (appointment with Dr. Vithala).] Each doctor recommended heart surgery. *Id*.

On November 12, 2013, Kumar reported to Middlesex Hospital experiencing chest pain. [Dkt. 13-9 at 8.] A physician at Middlesex Hospital conducted

multiple tests which confirmed Kumar's aortic aneurysm. *Id*. at 9. *Id*. Kumar left the hospital against medical advice. *Id*. Shortly thereafter, on November 25, 2013, Kumar ceased working. [Dkt. 13-4 at 16.]

On December 19, 2013, at Yale New Haven Hospital, Kumar underwent a cardiac catheterization in preparation for an aortic aneurysm repair surgery. [Dkt. 13-9 at 29.] The catheterization confirmed that the aortic aneurysm required surgical intervention. *Id*. at 30. Thereafter, Kumar met with multiple physicians to discuss his catheterization results, undergo further tests, and evaluate whether to have heart surgery. *See id.* at 31 (January 31, 2014 meeting with Dr. John Elefteriades); *id.* at 43-45 (June 4, 2014 and July 10, 2014 meetings with Dr. Sappington and EKG); *id.* at 68, 73 (November 26, 2014 and April 28, 2015 meetings with Dr. Sappington). At each appointment, the physicians confirmed that Kumar has an aortic aneurysm requiring surgery.

c. Medical Examinations and Opinions Before the ALJ

The only medical opinions in the record before the ALJ were produced by agency consultative physicians. Dr. Jaimie Burns, Dr. Robert Sutton, and Dr. Adrian Brown each evaluated Kumar's mental health and determined he had no functional limitation or only mild functional limitation stemming from mental health conditions. [Dkt. 13-9 at 7-8, 18, 60.]

As to Kumar's physical limitations, Dr. Firooz Golkar and Dr. Abraham Bernstein each opined that Kumar could occasionally lift 20 pounds, frequently lift 10 pounds, stand, sit, or walk for 6 hours in an 8 hour workday, frequently climb ramps or stairs or balance, and occasionally climb ladders or scaffolds,

3

stoop, kneel, crouch, or crawl.  [Dkt. 13-5 at 9, 19-20.]  Dr. Golkar attributed

Kumar's limitations to his ascending aorta aneurysm, hypertension ("htn"), and

gout.  *Id.* at 9.  Dr. Bernstein cited Kumar's aneurysm only.  *Id.* at 20.

### d. Medical Records and Opinions Not Presented to the ALJ

Kumar as also submitted to the Court medical records and opinions which

were not part of the record before the ALJ.  Those additional records are

described below.

#### i. Files from Other Disability Claims Not Included in the Record Before the ALJ

Prior to applying for social security benefits, Kumar applied for

Connecticut state disability retirement benefits claiming an effective retirement

date of September 1, 2014.  [Dkt. 13-3 at 168.]  The State of Connecticut's Medical

Examining Board granted Kumar's claim on January 9, 2015.  *Id.* at 193.  The file

includes letters from some of Kumar's treating physicians discussing his heart

condition and opining on his ability to function.  *See, e.g.*, *id.* at 174 (note from Dr.

Chawla stating Kumar should avoid activities which can lead to increased blood

pressure); *id.* at 182 (letter from Dr. Vithala stating Kumar should avoid "any

stress or anxiety" because "any increase in blood pressure can cause increased

ballooning [of his aorta] and this can be <u>fatal</u>") (emphasis in original).

The file also includes a letter from Dr. Rekha Rande-Kapur, Kumar's

treating mental health physician.  [Dkt. 13-3 at 183.]  Dr. Rande-Kapur stated it is

"well known" that stress can "exacerbate any illness, especially heart disease,"

and opined that Kumar could not cope with a high-stress job or one which required him to work more than four hours per day. *Id*. at 184.

Kumar also offers his applications for FMLA benefits dated June 10, 2013 and June 19, 2013. [Dkt. 13-4 at 27.] In those forms, Dr. Vithala states Kumar has a chronic condition requiring treatment and remarks that Kumar could work four hours per day for four to five days per week. *Id*. at 28.

### ii.   Medical Records Post-Dating the ALJ's Decision

Kumar also presents other medical records summarizing appointments with Dr. Sappington and at Yale New Haven Hospital, St. Francis Hospital, and Middlesex Hospital. [Dkt. 13-3 at 9, 52, 74-78, 80, 101, 149, 162.] The notes date from May 2009 through March 2016. *Id*. They consistently state Kumar has an aortic aneurysm and should undergo surgery. *Id*. The notes also state Kumar's aneurysm causes him fatigue and shortness of breath. *Id*.

### iii.   Opinions from Treating Physicians After the Hearing

Kumar also presents a letter from Dr. Sappington dated March 17, 2016. [Dkt. 13-3 at 50.] Dr. Sappington asserts that Kumar must restrict his activities in order to avoid worsening his heart condition. He also states Kumar suffers from "chest pain, dizziness, edema, uncontrollable blood pressure, severely disabling fatigue, and sleep problems" due to his aortic aneurysm. *Id*.

Kumar also provides a statement from Dr. Vithala assessing Kumar's RFC based on Kumar's aortic aneurism, anxiety, and depression. *Id*. Dr. Vithala found that Kumar's conditions occasionally interfere with his attention and concentration. *Id*. at 29. He also found Kumar can walk one block without rest or

severe pain, sit for 30 minutes at a time, stand for 20 minutes at a time, and can rarely lift 10 pounds. *Id.* at 29-30. If sitting for a prolonged period, Dr. Vithala found that Kumar needs to elevate his legs 6-12 inches above his heart. *Id.* Dr. Vithala also found that Kumar is likely to have "good days" and "bad days" and is likely to be absent from work for medical reasons for more than five days per month. *Id.* at 31. The assessment is dated April 13, 2016, but includes a note stating "[t]his opinion relates back to 11/25/2013." *Id.*

### d. The Hearing Before the ALJ

On August 19, 2015, ALJ Louis Bonsangue ("ALJ Bonsangue") held a hearing to consider Kumar's disability claim. [Dkt. No. 13-4 at 34.] At the hearing, Kumar testified that his job as a chemist required him to intermittently sit and stand, and sometimes required him to lift heavy containers. *Id.* at 46-47. Kumar stated he could not continue to work as a chemist because he had to take too many breaks due to shortness of breath. *Id.* at 58. In addition, Kumar stated the stress of the job would raise his blood pressure which could cause an aneurysm. *Id.*

Kumar testified he does not help his wife with cooking and cleaning because he experiences shortness of breath. *Id.* at 60. Kumar continues to do light dusting and take out the trash when it's not "too heavy." *Id.* at 61. He has no driving limitations. *Id.*

In addition to his aortic aneurysm, Kumar stated he takes medication for hypertension, cholesterol, gout, anxiety, and depression. *Id.* at 51-54. He stated

medication keeps his symptoms largely under control, but that he still experiences periodic swelling and pain related to gout. *Id.*

A Vocational Expert, Dr. Sacks, also testified at the hearing. *Id.* at 61. Dr. Sacks classified Kumar's work as a chemist as light work. *Id.* at 62. Dr. Sacks opined that someone of Kumar's age, education, and past work, limited to light exertion, who can frequently climb stairs, occasionally climb ropes, ladders, or scaffolds, frequently balance, and occasionally stoop, crouch or crawl, could perform Kumar's prior work. *Id.* at 63. In addition, Dr. Sacks opined that such a person could work as a receptionist, a general office clerk, or production inspector, each of which is light work. *Id.* at 63-65.

e. <u>The ALJ's Decision</u>

On December 2, 2015, ALJ Bonsangue found Kumar not disabled from November 25, 2013 through the date of the decision. [Dkt. No. 13-4 at 21.]

ALJ Bonsangue relied on the following finding findings in rendering his decision. Kumar had one severe impairment: an aortic aneurysm. *Id.* at 16. However, he found Kumar's impairment did not meet or medically equal the severity of a listed impairment under 20 C.F.R. 404, Subpart P, Appendix 1. *Id.* at 17. Kumar's condition did not meet or equal the requirements of listing 4.10, concerning aneurysm of aorta or major branches, because no medical records demonstrated that Kumar's aneurysm was dessicated. *Id.*

ALJ Bonsangue next considered Kumar's RFC. [Dkt. 13-4 at 17.] ALJ Bonsangue found Kumar's aortic aneurysm could reasonably be expected to cause his alleged symptoms, including shortness of breath, chest pain, and

exhaustion. *Id*. at 18. However, he found Kumar's testimony only partly credible because medical records did not show that Kumar consistently complained of experiencing those symptoms. *Id*. ALJ Bonsangue also considered Dr. Burns' opinion that Kumar's mental health symptoms were well managed by his current treatment. *Id*. He gave Dr. Burns' opinion great weight, as he found it consistent with Kumar's testimony regarding his mental health. *Id*. Finally, the ALJ agreed with Vocational Expert Dr. Sacks' opinion as to Kumar's residual functional capacity and ability to work as a chemist, receptionist, general office clerk, or production inspector. *Id*. at 17, 20-21. ALJ Bonsangue concluded Kumar was not disabled. *Id*.

## II.    Standard of Law

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1). In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process.[1] A person is disabled under the

---

[1]  The five steps are as follows: (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work

Act when their impairment is "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.§ 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). The Court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the Commissioner's decision applies the correct legal principles and is supported by substantial evidence, that decision will be sustained. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

III. Discussion

Kumar asserts the ALJ should have developed the record to include all of the medical records and opinions described in section I(d) above. [Dkt. 14-1 at 11.] The Government responds that the Social Security Administration ("SSA") fulfilled its duty to develop the record. [Dkt. 22-1 at 21.]

---

which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)—(v).

The ALJ must fully develop the administrative record, even when the claimant is represented by counsel. See *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009); *Casino–Ortiz v. Astrue*, No. 06-civ-155, 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). The ALJ must make "every reasonable effort" to obtain medical reports from a claimant's healthcare providers. 20 C.F.R. §§ 404.1512(d), 416.912(d).

An ALJ has fully developed the record when it is "complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." 20 C.F.R. § 404.1513(e)(1)-(3). When the "report from [a claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques," the ALJ must further develop the record. 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); *see also Austin v. Astrue*, No. 3:09-cv-765, 2010 WL 7865079, *9–10 (D. Conn. Sept. 30, 2010) (citing *Perez*, 77 F.3d at 47).

Where an ALJ has failed to develop the record, "the issue is whether the missing evidence is significant." *Santiago v. Astrue*, No. 3:10-cv-937, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing *Pratts v. Chater*, 94 F.3d 34, 37–38 (2d Cir. 1996)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Where the record is not sufficiently developed, the Commissioner has a duty to develop the record and remand is appropriate. *Rosa*

**10**

*v. Callahan*, 168 F.3d 72, 82-83 (2d Cir.1999) (quoting *Pratts*, 94 F.3d at 39); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980).

The Court finds the ALJ failed to fulfil his duty to develop the record regarding four categories of information, each of which is discussed below.

### a. Treating Physician Opinions

The ALJ failed to seek opinions from Kumar's treating physicians regarding his residual functional capacity. 20 C.F.R. § 416.913(b)(6) (stating the SSA "will request a medical source statement about what [the claimant] can still do despite [his or her] impairments"). The record indicates the SSA requested RFC analyses from Middlesex Hospital, Dr. Sappington, and St. Francis Hospital on July 1, 2014. [Dkt. 13-9 at 20, 42, 57.] However, when those healthcare providers produced medical records to the ALJ, they did not produce RFC analyses, and the ALJ made no additional requests for them. Further, the Court has not found, and the Government has not cited, any evidence that the SSA requested RFC analyses from Kumar's other treating physicians.

The SSA's failure to obtain opinions from Kumar's treating physicians was significant. While the ALJ cited Dr. Sappington's notes when determining Kumar's RFC, "it is not sufficient for the ALJ simply to secure raw data from the treating physician" in lieu of an opinion. *Seekins v. Astrue*, 3:11-cv-264, 2012 WL 4471264, at *5 (D. Conn. Sept. 27, 2012) (Bryant, J.). The SSA's duty to "obtain medical source statements from a claimant's treating physicians is particularly acute" because a treating physician's opinion is "given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); *DeLeon v. Colvin*, 3:15-cv-01106, 2016 WL 3211419, at *3-4 (D. Conn. June 9, 2016).  Where, as here, the record "contains no indication of the views of [the claimant's] treating physicians as to [his] residual functional capacity," remand to obtain treating physician opinions is appropriate.  *DeLeon*, 2016 WL 3211419 at *3-4.

      b.  <u>Mental Health Records</u>

In addition, the ALJ did not fulfill his duty to develop the record regarding Kumar's anxiety and depression.  Dr. Rande-Kapur informed the SSA that he would produce his records if subpoenaed.  It is within an ALJ's discretion to determine whether a subpoena is "reasonably necessary for the full presentation of a case."  20 C.F.R. 404.950(d); *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).  However, a failure to subpoena medical records which were "reasonably necessary" is harmful error.  *Sweeney v. Colvin*, 3:13-cv-703, 2015 WL 5684024, at *2 (D. Conn. Sept. 28, 2015) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) ("Social Security regulations require[] the ALJ to subpoena [medical records] if [they are] reasonably necessary for the full presentation of the case.")).

The ALJ's failure to subpoena Dr. Rande-Kapur's medical records is significant, as he is Kumar's only treating mental health professional.  The record is devoid of any "reports or materials reflecting [the] course of treatment" pertaining to Kumar's mental health, and the ALJ was accordingly required to

"obtain or attempt to obtain" records from Dr. Rande-Kapur. *Rosa*, 168 F.3d at 80. When Dr. Rande-Kapur indicated he would produce his records pursuant to a subpoena, a subpoena became "reasonably necessary for the full presentation" of Kumar's case. 20 C.F.R. 404.950(d). The ALJ erred in failing to take necessary steps to develop the record regarding Kumar's mental health, and remand is appropriate.

### c. Records Regarding Gout

The ALJ also failed to develop the record regarding Kumar's gout. The only references to gout in the record are in a consultative physician's RFC analysis and the list of prescription medications Kumar takes. [Dkt. 13-5 at 9 (Dr. Golkar identifying gout as a basis for Kumar's functional limitations); Dkt. 13-8 at 9 (list of medications).] At the hearing, Kumar affirmed that he takes daily gout medication and experiences swelling and pain related to gout. [Dkt. 13-4 at 51-52.] The medical records before the ALJ contain no notes discussing Kumar's gout-related symptoms, diagnosis, or treatment plan.

As with Kumar's mental health, the record is devoid of any "reports or materials reflecting a course of treatment" regarding gout. *Rosa*, 168 F.3d at 80. The apparent gaps in the medical record pertaining to Kumar's gout should have led the ALJ to further develop the record to ensure it included Kumar's complete medical history. 20 C.F.R. § 415.912(b)(1); *Austin*, 2010 WL 7865079 at *9–10. Without being able to review any omitted medical records pertaining to Kumar's gout, the Court cannot discern whether their exclusion from the record harmed Kumar, and remand is appropriate. *See Rosa*, 168 F.3d at 82 (remanding where

**13**

the ALJ failed to develop the record sufficiently to make "any appropriate determination in either direction").

> d. <u>Files from Other Disability-Related Claims</u>

Finally, the ALJ should have obtained the records from Kumar's Connecticut state retirement claim and FMLA claims. The Court recognizes that different standards of proof apply to these claims, and Kumar's success in obtaining Connecticut retirement benefits and FMLA benefits is not dispositive here. However, "Social Security regulations require[] the ALJ to subpoena [a claimant's] prior disability file if it [is] 'reasonably necessary for the full presentation of the case.'" *DeChirico*, 134 F.3d at 1184 (citing 20 C.F.R. 404.1512); *see also Mann v. Chater*, No. 95-civ-2997SS, 1997 WL 363592, at *8 (S.D.N.Y. June 30, 1997) (Sotomayor, J.) (stating "decisions made by any government agency about whether [the claimant] was disabled" are "relevant"); *Hardy v. Astrue*, No. 12-cv-112S, 2013 WL 707329, at *3 (W.D.N.Y. Feb. 26, 2013) (remanding to further develop the record to include records pertaining to the claimant's eligibility for supplemental security income).

The failure to obtain Kumar's other disability-related claim files was significant. The files contain opinions from treating physicians regarding Kumar's ability to work, and such opinions were completely absent from the record before the ALJ. [*See, e.g.*, Dkt. 13-3 at 182 (Dr. Vithala's statement that work-related stress could be "<u>fatal</u>" to Kumar (emphasis in original); Dkt. 13-4 at 27 (Dr. Vithala's statement that Kumar's condition limits his ability to work to four hours per day for four or five days per week).] In addition, the files include a

statement from Dr. Rande-Kapur which would have constituted the only record evidence from Kumar's treating mental health physician, and which would have included the only diagnosis of anxiety and depression in the record. [Dkt. 13-3 at 183.]  A review of these files "reveals a host of lost opportunities" to consider opinions from Kumar's treating physicians. *Rosa*, 168 F.3d at 80.  Remand for further development of the record in this area is appropriate. *Santiago*, 2011 WL 4460206 at *2.  In light of the Court's remand to further develop the record, the Court need not consider Kumar's additional arguments.

## IV.    Conclusion

For the reasons set forth above, Kumar's Motion to Remand the Commissioner's Decision [Dkt. No. 14] is GRANTED and the Commissioner's Motion to Affirm that Decision [Dkt. No. 22] is DENIED.  The case is remanded for rehearing consistent with this decision.

Should Kumar's claim be denied upon rehearing and the claimant appeal again, the claimant is ordered to inform the Clerk of Court that the case was remanded by this Court and should therefore be assigned to this Court for any future proceedings.  In that event, the parties are specifically ordered to comply with this District's Standing Scheduling Order on Social Security Cases and in particular to file a joint stipulation of facts as required therein.  Failure to comply may result in the summary dismissal or remand of the case without further notice.

**It is so ordered this 26th day of September 2017, at Hartford, Connecticut.**

/s/

**Vanessa L. Bryant, U.S.D.J.**